```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   10/10/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA, f/u/o/b
PROFEX, INC. and PROFEX, INC.,

          Plaintiffs,

-against-

WESTCHESTER FIRE INSURANCE
COMPANY, KIRLIN BUILDERS, LLC,
LIBERTY MUTUAL INSURANCE
COMPANY,

          Defendants.

---

KIRLIN BUILDERS, LLC,

          Third-Party Plaintiff,

-against-

WESTERN SURETY COMPANY,

          Third-Party Defendant.

22 CV 15 (NSR)

AMENDED*

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Profex, Inc. ("Plaintiff" or "Profex") commenced this action against Defendants, Kirlin Builders, LLC ("Kirlin"), Liberty Mutual Insurance Company ("Liberty Mutual"), and Westchester Fire Insurance Company ("Westchester") (collectively, "Defendants"), asserting claims for 1) breach of contract, 2) quantum meruit, and 3) action on surety bonds[1]. (ECF No. 1, Complaint ("Compl.").) To recover its cost-to-complete costs, Kirlin filed a Counterclaim against Profex (ECF No. 18, "Counterclaim") and further filed a third-party complaint for breach

---

[1] Count Three (Action on Surety Bonds) is not a separate cause of action; rather, Profex uses this claim to assert the first two causes of action against Kirlin's co-defendant sureties, Liberty and Westchester.

*Only the Conclusion was amended.

1

of contract against Profex's surety, Western Surety Company ("Western") (ECF No. 19, Third-Party Complaint ("Third-Party Compl.").)

Presently before the Court are Defendants' Motion for Summary Judgment on Plaintiff's claims and Kirlin's Motion for Partial Summary Judgment against Profex and its surety, Western (ECF No. 105, "Mot.") For the following reasons, the Court GRANTS Defendants' motion for summary judgment, and DENIES Kirlin's Motion for Partial Summary Judgment with respect to Kirlin's Counterclaim and Third-Party Complaint.

## BACKGROUND

### A. FACTUAL BACKGROUND

The facts below are taken from Defendants' Statement of Undisputed Facts (ECF No. 106-1, "SUF"), Plaintiff's Response to the Statement of Undisputed Facts (ECF No. 108, "Pltf. SUF Resp."), and the Parties' supporting documentation[2], and are uncontested except where otherwise indicated. The Court recites these facts as the relevant factual background for purposes of its analysis in this Opinion.

Kirlin, as general contractor, entered into a prime contract with the United States for the repair and renovation of the Johnson Veterinary Clinic at West Point, New York. (SUF ¶ 1.) On July 30, 2019, Kirlin subcontracted with Profex in the amount of $6,212,787. (*Id.*) The Subcontract was governed by New York law (*Id.* ¶ 19), incorporated various flow-down provisions (*Id.* ¶ 71), declared that "time is of the essence" (*Id.* ¶ 76), and authorized Kirlin to

---

[2] Kirlin-Profex Subcontract (ECF No. 106-3, "Subcontract"); Defendants' Motion for Summary Judgment and Partial Summary Judgment (ECF No. 105); Declaration of Charissa Porter in Support of Motion (ECF No. 106-2, "Porter Decl."); Declaration of Kevin Walsh in Support of Motion (ECF No. 106-15, "Walsh Decl."); Declaration of Doug Callabresi (ECF No. 106-28, Callabresi Decl."); Defendants' Memorandum of Law in Support of Motion (ECF No. 106), Defendants' Reply Memorandum of Law in Support of Motion (ECF No. 109); Plaintiff's Memorandum of Law in Opposition (ECF No. 107), Declaration of Roland Bloomer in Opposition of Motion (ECF No. 108-1, "Bloomer Decl."); Declaration of Joshua Erickson in Opposition of Motion (ECF No. 108-2, "Erickson

2

direct overtime or extra shifts without additional cost. (*Id.* ¶¶ 77–78.) It also included provisions governing change order adjustments, payment, disputes, and termination. (*See generally* ECF No. 106-3, Kirlin-Profex Subcontract ("Subcontract").)

As the project progressed, substantial delays arose, and responsibility became contested. Kirlin attributes roughly 600 days of delay to Profex, citing late coordination drawings, inadequate staffing, failure to pay subcontractors, missing documentation such as its proposed change orders ("PCOs") log, and abandonment of work. (SUF ¶¶ 2–3.) Consequently, Kirlin sent Profex seven Notices of Default and three Notices to Cure, which it claims were not adequately addressed within the 48-hour cure period required under Section 15 of the Subcontract. (*Id.* ¶ 3-4.) Section 15 permits Kirlin, after giving "notice of default and forty-eight (48) hours to cure," to require overtime at Profex's expense, "terminate Subcontractor's performance,", and "recover all losses, damages, penalties, fines, and reasonable attorneys' fees" resulting from default. (Subcontract at 5-6.) Profex contests both the validity of these notices and Kirlin's characterization of the delays, asserting that the primary causes were deficiencies in Kirlin's drawings, poor project management, and the COVID-19 pandemic. (Pltf. SUF Resp. ¶¶ 2–4.)

For approximately the first 18 months of performance, Profex submitted PCOs sequentially and in writing, a process Defendants describe as a mutual course of dealing consistent with the Subcontract's requirement.[3] (SUF ¶¶ 30, 32, 34.) During this period, Profex submitted 56 PCOs chronologically and in writing; 17 of which were approved by Kirlin and the Government, while the remainder were rejected for lack of documentation or scope issues. (*Id.*

---

Decl."); Declaration of Avery F. Sherwood in Opposition of Motion (ECF No. 108-3, "Sherwood Decl.");
Declaration of Kenneth Lentz in Opposition of Motion (ECF No. 108-4, "Lentz Decl.").

[3] Under the Subcontract, all change orders and modifications must be submitted in writing and approved by Kirlin before any additional compensation may be sought. (SUF ¶ 30.)

¶¶ 7, 31–32.) It is alleged that Profex did not adequately supplement these rejected change orders. (*Id.* ¶ 54.)

Defendants contend that beginning in late 2020, Profex unilaterally deviated from the Subcontract and the parties' 18-month course of dealing, submitting PCOs out of sequence, years after the work, or with fabricated or altered cover letters. (*Id.* ¶¶ 10, 35, 69, 80.) From December 30, 2020 to August 6, 2021, Profex submitted only 7 of its next 17 PCOs (#57–74) to Kirlin chronologically and in writing; and after August 14, 2021, it submitted just one of the remaining 116 PCOs. (SUF ¶ 36.) Kirlin notes that the last 116 PCOs—dated between October 14, 2019 and December 20, 2021—spanned both before and after Profex's termination and were therefore neither timely nor in proper order. (SUF ¶ 37.) Metadata reviewed by Kirlin also allegedly showed many PCOs were created only around the time litigation commenced. (*Id.* ¶ 10.) Accordingly, Defendants allege that Profex's unilateral deviation led to nonpayment of most of Profex's 165 alleged and unapproved PCOs, forming the basis of its breach-of-contract claim. (SUF ¶ 13.) Whereas Profex contends Kirlin itself abandoned the written approval requirement earlier in the project, instructed Profex to proceed with extra work on assurances that change orders would be approved later, and caused confusion through its own record-keeping practices. (Pltf. SUF Resp. ¶¶ 11, 33–36, 38–40.)

On November 10, 2021, Kirlin terminated Profex for cause, citing failure to cure defaults, failure to pay subcontractors and suppliers, and abandonment. (SUF ¶ 5.) Kirlin allegedly completed the project on its own on February 19, 2022, using a combination of Profex's subcontractors and its own workforce, and incurred $330,754.49 in completion costs, which it seeks to recover under Section 15(ii) of the Subcontract. (*Id.* at ¶¶ 5-6, 85–87.) However, Profex

4

claims the termination was a pretext to avoid payment and that Kirlin did not complete all required work. (Pltf. SUF Resp. ¶¶ 5–6.)

At the heart of this dispute—and the primary focus of the Court's opinion—is Section 19 of the Subcontract, which Defendants contend bars Profex's claims. (ECF No. 106, ("Mem.") at 5-6.) Section 19 provides that any "dispute or claim" by Profex requires timely "notice in writing" to Kirlin "within a reasonable time following the event, decision or other action" giving rise to the dispute. (SUF ¶ 17.) It further states that claims not noticed in writing "within a reasonable time" after the triggering event—or within stricter contractual deadlines—will be "deemed waived or abandoned." (*Id.*) Defendants contend that Profex failed to submit formal "Notices of Dispute" under Section 19, thereby procedurally barring its unpaid or disputed PCOs and preventing Kirlin from presenting those claims to the Government. (*Id.* ¶¶ 16–18, 20, 22–24.) As a direct result of Profex's noncompliance, Kirlin faced financial consequences because Section 19 and the Subcontract's incorporated FAR clauses precluded Kirlin from recovering from the Government for disputed work absent timely written notice from Profex.[4]

(*Id.* ¶¶ 21–22.) Profex, in contrast, maintains that the strict notice requirement had been waived or abandoned by the parties' course of dealing, it was "unaware of the final payment procedure", and that Kirlin had knowledge of the disputed work. (Pltf. SUF Resp. ¶¶ 15–18, 20, 22–24.) Profex alleges that Kirlin's own conduct—including directions to proceed with additional work and assurances of retroactive approval—effectively waived the written-notice requirement and rendered Section 19 moot by the time of termination. (*Id.*)

---

[4] FAR Section 52.243-4(f) ("Changes"), incorporated by reference into the Subcontract, states that "no proposal by the Contractor for an equitable adjustment shall be allowed if asserted after final payment under this contract." (SUF ¶ 21.) The Government issued final payment to Kirlin on October 31, 2022, and by that date Kirlin had not received any notices of dispute from Profex or any unpaid and properly submitted, supported, or approved PCOs. (*Id.* ¶ 22.)

5

Defendants further claim the Subcontract covered all aspects of the Project—performance, payment, and remedies—and that Profex's nonpayment of subcontractors, failure to respond to notices, and abandonment triggered Kirlin's right to complete the work and recover $330,754.49 in completion costs. (SUF ¶¶ 81–83, 85–90.) Profex, however, characterizes the Subcontract as defective and unworkable from the outset, maintains it was effectively abandoned, and disputes Kirlin's reliance on the termination provisions as a pretext to avoid payment. (Pltf. SUF Resp. ¶¶ 81–83, 85–90.)

### B. PROCEDURAL HISTORY

Plaintiff Profex filed this action on January 3, 2022, asserting claims for breach of contract, quantum meruit, and action on surety bonds, seeking $2,506,282.02—the amount it alleges is owed for labor performed, materials supplied, and equipment furnished by Profex. (Compl. ¶ 20.) On February 22, 2022, Kirlin also filed a Counterclaim against Profex and filed a third-party complaint against Western to recover its costs-to-complete the remainder of the project in the amount of $330,754.49. (Counterclaim., Third-Party Compl.)

On January 21, 2025, Defendants filed a Motion for Summary Judgment on Plaintiff's claims, alleging that Profex defaulted on its obligations, improperly sought payment for 165 unsupported PCOs, and abandoned the project, thereby justifying termination for cause. (SUF ¶¶ 5, 13, 85–87.) At the same time and a result of Profex's termination, Kirlin filed a Motion for Partial Summary Judgment against Profex and Western to recover $330,754.49 in completion costs. (SUF ¶¶ 5–6.) Both Motions were supported by a single Memorandum of Law, which Plaintiff opposed (ECF No. 107, "Opp."), and to which Defendants replied. (ECF No. 109, "Reply.")

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations [*18] omitted). Notably, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original). To prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere

allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Rather, the non-moving party must advance more than a "scintilla of evidence," *Anderson,* 477 U.S. at 252, 106 S. Ct. 2505, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Notably, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Instead, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### DISCUSSION

#### A. Profex's Claims are Barred by the Subcontract's Condition Precedent

Profex's claims are barred because it failed to submit written notices of dispute as required by the Kirlin–Profex Subcontract, and it has not demonstrated any valid waiver of that requirement. In this matter, New York law applies because the Miller Act controls the parties' Subcontract. [5] When a construction contract contains a "condition precedent-type notice provision setting forth the consequences of a failure to strictly comply," strict compliance will be

---

[5] Subcontract Section 36 provides that "This Subcontract shall be governed by the laws of the state of New York." (SUF at ¶ 19.) Second Circuit adopted the Ninth Circuit's view that state law controls the interpretation of Miller Act subcontracts in *Leo Spear Constr. Co. v. Fidelity & Casualty Co*., 446 F.2d 439, 443 n.1 (2d Cir. 1971) (citing *Continental Casualty Company v. Schaefer*, 173 F.2d 5 (9th Cir.), *cert. denied*, 337 U.S. 940, 69 S. Ct. 1517, 93 L. Ed. 1745 (1949)). Because both parties cite primarily to New York law, the Court will assume that New York law controls the present dispute. *See Krumme v. WestPoint Stevens, Inc*., 238 F.3d 133, 138 (2d Cir. 2000).

required under New York law. *Northgate Elec. Corp. v. Barr & Barr, Inc.*, 61 A.D.3d 467, 468–69 [2009]; *see also A.H.A. Gen. Constr. v. New York City Hous. Auth.*, 92 N.Y.2d 20, 26-29 [1998] (holding that failure to comply with contractual notice and recordkeeping provisions barred a contractor's extra work claims); *Kingsley Arms, Inc. v. Sano Rubin Constr. Co., Inc.*, 16 A.D.3d 813, 814-15 [2005]; *Morelli Masons, Inc. v. Peter Scalamandre & Sons*, 294 A.D.2d 113, 113-14 [2002]. Defendants contend that Profex failed to submit formal "Notices of Dispute" under Section 19, thereby procedurally barring its unpaid or disputed PCOs. (SUF ¶¶ 16–18.) The Court agrees. Section 19 of the Subcontract contains a strict condition precedent notice provision, stating that failure to give written notice within a reasonable time for any contested claim constitutes a waiver and that the claim will be deemed abandoned. (SUF ¶ 15.) Thus, compliance with this provision is a condition precedent to Profex's claim, and a failure to strictly comply bars its claim. *Kingsley Arms*, 16 A.D.3d at 814; *A.H.A.*, 92 N.Y.2d at 30–31.

Although under New York law parties may waive written notice requirements by their conduct, that waiver must be "indisputable" and supported by clear evidence of mutual departure. *Austin v. Barber*, 227 A.D.2d 826, 828 [1996]; *see also Barsotti's, Inc. v. Consolidated Edison Co. of N.Y.*, 254 A.D.2d 211, 212 [1998] (quoting *United States for Use & Benefit of Evergreen Pipeline Constr. Corp., Inc. v. Merritt-Meridian Constr. Corp.*, 890 F. Supp. 1213, 1220 (S.D.N.Y. 1995)). Profex concedes it did not strictly comply with the notice provision but argues Kirlin waived strict compliance because the formal notice requirement had been abandoned. (Pltf. SUF Resp. ¶¶ 13, 15–17.) To support its waiver theory, Profex submits affidavits from Profex's President, Ronald Bloomer, Profex's Project Manager, Kenneth Lentz, and two Kirlin employees claiming that Kirlin verbally approved change orders, the contract was "virtually abandoned", and that time constraints prevented formal notices. (ECF No. 108-1,

Bloomer Decl. ¶¶ 4–5; ECF No. 108-2, Erickson Decl. ¶ 3; ECF No. 108-3 Sherwood Decl. ¶ 5; ECF No. 108-4, Lentz Decl. ¶¶ 5–6.) Affidavits based on personal knowledge but lacking corroborating documentation are insufficient to create a factual issue. *Salaam v. Adams*, No. 9:03CV0517, 2006 WL 2827687, at *5 (N.D.N.Y. 2006) ("[E]ven where an affidavit is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is… "largely unsubstantiated by any other direct evidence."); *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005). Both Bloomer's and Sherwood's declarations reference exhibit attachments, yet no corresponding attachments appear on the docket. Plaintiff's sole exhibit is from Lentz's affidavit, which contains an email where he asks Mr. Johnson, a Kirlin employee, whether Kirlin required written approval for an oral directive regarding PCO #1. (*See* Lentz Decl., Ex. 1.) Yet Plaintiff omits other emails in this specific thread, highlighting the fact that Profex had already submitted PCO #1, Kirlin approved it, and issued Change Order (CO-01) for asbestos abatement prior to Mr. Lentz's inquiry. (Callabresi Decl. ¶ 25; Ex. C-18.) The full October 27, 2021 email from Kirlin's Ryan Johnson to Mr. Lentz—attached as Defendants' Exhibit C-18—confirms an approved and executed change order, not a waiver of the notice provision. (Callabresi Decl. ¶ 25; Ex. C-18.) Plaintiff's selective excerpts distort the record; the full exchange shows proper approval and documentation. Accordingly, Profex's affidavits—generally lacking corroboration from other direct evidence—fail to create a factual issue, and nothing in Plaintiff's materials demonstrates that Section 19's condition precedent under the Kirlin–Profex Subcontract was ever waived.

Beyond merely failing to prove waiver of the condition precedent, Profex's own conduct demonstrates that it both knew of—and repeatedly disregarded—the Subcontract's notice requirements for PCOs. Multiple Profex employees testified that they did not believe written

notice was required under the Subcontract and were unaware of any formal notices of dispute coming from Profex, underscoring a consistent failure to comply with the contractual procedure. Both Profex's President, Ronald Bloomer, and its Project Manager, Kenneth Lentz, explicitly confirmed in their deposition testimony[6] that formal notice was not provided when submitting PCOs, further evidencing noncompliance with the Subcontract's obligations. Additionally, in an April 8, 2021 email to Kirlin's Joshua Erickson, Bloomer wrote, "*they tell me I cannot do anything without paperwork*," candidly admitting that Profex understood it could not proceed without complying with the Subcontract's written PCO procedures—yet still failed to do so. Taken together, these facts show that Profex was fully aware of the notice requirement and consciously chose not to adhere to it, supporting Kirlin's position that Profex's breach of contract claims are procedurally deficient.

For the foregoing reasons, Profex's breach of contract claim is barred. Because summary judgment is granted based on the Subcontract's notice of dispute provision, the Court need not reach Defendants' additional arguments under its breach of contract claim.

### B. The Existence of a Valid Contract Bars Profex's Alternative Claim for Quantum Meruit

Profex's alternative quantum meruit claim fails as a matter of law because a valid, enforceable Subcontract governs the same subject matter. Under New York law, a claimant must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 69 (2d Cir. 2000) (citation and internal quotation marks omitted). However, recovery in quantum meruit is

---

[6] *See* Ronald F. Bloomer Deposition Transcript at 189:2-4 ("[I]s it Profex's understanding they had to provide written notice of such a default? A. No."); 161:15-17 ("And did Profex submit PCOs in writing for every single one to Kirlin? A. Not every single one."); Kenneth Lentz Jr. Deposition Transcript at 51:23-52:2 ("So are you aware of

unavailable under New York law if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir. 2005); *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.,* 70 N.Y.2d 382, 388 [1987]; *R&B Design Concepts, Inc. v. Wenger Const. Co.,* 153 A.D.3d 864, 865 [2017]. Defendants contend that Profex is barred from recovery under this equitable theory because the Kirlin-Profex Subcontract is 1) a valid contract and 2) the "entire subject matter of Profex's work, performance, and payment for the Project was contained in the Subcontract." (SUF ¶ 82.) The Court agrees.

Because a valid and enforceable subcontract governs the same subject matter as Profex's quantum meruit claim, recovery under an equitable theory is barred**.** The Kirlin–Profex Subcontract is a valid and enforceable construction contract that comprehensively governs the parties' relationship, including the scope of work, terms of payment, and procedures for submitting and approving proposed change orders. (SUF ¶ 82.) In addition to being fully executed and a written agreement, the Subcontract bears the initials of each party on every page, evidencing mutual assent to all of its terms and leaving no ambiguity as to the parties' intent to be bound. (*See generally* Subcontract.) Each provision is clearly delineated—covering payment procedures, notice requirements, and change-order protocols—showing that essential terms were agreed and integrated. (*Id.*) As such, the Kirlin-Profex Subcontract is not "a mere fiction." *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC,* 680 F. Supp. 3d 322, 337 (S.D.N.Y. 2023)*.* These characteristics directly distinguish this Subcontract from authorities where no enforceable contract was found. *See Keitel v E*TRADE Fin. Corp.*, 153 A.D.3d 1181, 1182-83 [2017] (term sheet did not constitute enforceable contract); *see also Ciaramella v. Reader's Digest Ass'n*, 131

---

any of these written notices of dispute submitted by Profex to Kirlin? A. I am not."); 92:21-25 ("But you're not aware of any notices of disputes in writing coming from Profex, correct? A. I am not, no.")

F.3d 320, 323 (2d Cir. 1997) (contractual drafts requiring signature only did not constitute formal agreement.) This Subcontract also covers the very same subject matter for which Profex seeks recovery in quantum meruit—namely, compensation for labor performed, materials used, and its PCO submissions. Because the express terms of the Subcontract directly address these issues, any equitable claim (i.e., quantum meruit, unjust enrichment) based on the same facts is barred under New York law.

Plaintiff's effort to undermine the validity of the Kirlin–Profex Subcontract with its "abandonment" theory collapses under scrutiny. Contrary to Plaintiff's claim that the Subcontract was "virtually abandoned early in the construction process" (Opp. at 11), the evidence shows it remained fully operative throughout the Project. Numerous emails between Profex and Kirlin employees address change order adjustments, the Subcontract's notice provision, and other project matters. (*See* Porter Decl. ¶¶ 85-88, Ex. A-13-6; Walsh Decl. ¶ 83, A-13; Walsh Decl. ¶ 25, C-18.) Plaintiff offers only a conclusory assertion of abandonment and no documentation to support it. As mentioned above, the Kirlin-Profex Subcontract covers precisely the same subject matter on which Profex now seeks quasi-contractual recovery and its clearly delineated terms on payment, notice, and change-order procedures show that all essential provisions were agreed and integrated. Allowing a quasi-contractual claim here would directly contravene New York law, which bars recovery in quantum meruit where an express contract governs the same subject matter. Equity cannot override a valid contractual agreement, and Plaintiff's challenge to the Subcontract's validity fails.

Profex also bypassed the limited avenues New York law provides. A party may either rescind an agreement and seek restitution or perform under protest and sue for breach. *Frio*, at 338. Defendants argue that both avenues were available to Profex. But Profex did not pursue

13

either. It expressly concedes that it "did not rescind the contract," instead claiming "virtual abandonment"—a theory already shown to be baseless—and admits it continued performing under the Subcontract without protest. (Reply at 11.) Consequently, Profex neither pursued damages for breach while performing under protest nor rescinded the Subcontract to seek restitution in quasi-contract. And even if it had, New York law bars quasi-contract recovery where a valid, enforceable agreement governs the dispute. *Frio*, 680 F. Supp. 3d at 337-38; *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011) (quoting *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006)). Accordingly, Profex's alternative quantum meruit claim fails as a matter of law because a valid, enforceable subcontract governs the same subject matter.

### C. Profex's Claim for Unjust Enrichment, Whether Considered as a Standalone Cause of Action or as Subsumed Within Quantum Meruit, Is Barred

While it is unclear whether Profex intends to assert unjust enrichment as a separate cause of action, or merely as a theory subsumed within its quantum meruit claim, any such theory is not viable. First, a party may not assert new facts or legal theories for the first time in opposition papers, as a party may not use motion papers to amend the allegations in its complaint. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *see also Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 120-21 (S.D.N.Y. 2023) (quoting *Heletsi v. Lufthansa German Airlines, Inc.*, 2001 WL 1646518, at *1 (E.D.N.Y. 2001). Although Profex raises this claim in its Opposition, it was not included in the Complaint and is therefore barred. While unjust enrichment and quantum meruit are not "distinct causes of action", they are distinct legal concepts and Profex merely discussing unjust enrichment in its Opposition does not automatically make it part of the lawsuit. Second, even if Profex had properly pled unjust enrichment, or alternatively treated it as an element subsumed within its quantum meruit theory, the claim would nevertheless be barred. As

explained above in Section C, the parties' relationship is governed by a valid and enforceable contract, which forecloses recourse to quasi-contractual remedies. *See Clark-Fitzpatrick* at 388; *Frio* at 337; *see also Aniero Concrete Co. v. New York City Const. Auth.*, 308 F. Supp. 2d 164, 179 (S.D.N.Y. 2003) ("Claims for unjust enrichment or *quantum meruit* "are non-contractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter.") Accordingly, Profex's unjust enrichment theory—whether advanced as a standalone cause of action or subsumed within quantum meruit—is barred as a matter of law.

### D. Kirlin's Motion for Partial Summary Judgment Against Profex and Western Fails

Kirlin's partial motion for summary judgment to recover cost-to-complete costs, totaling $330,754.49, against Profex and its surety, Western, is denied.

While Kirlin may have incurred costs associated with Profex's termination, it has not shown that such expenses are directly caused by Profex's default and therefore has failed to establish either liability or damages. Both New York state law and Second Circuit precedent require Plaintiffs in construction disputes to prove both liability and the actual damages incurred. *See Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.,* 946 F.2d 1003, 1010 (2d Cir. 1991) (one "cannot recover for costs occasioned by its own errors."); *Haber v. Gutmann*, 64 A.D.3d 1106, 1108 [2009] ("damages must be reasonably certain… not based upon speculation."). Here, Kirlin claims it incurred $330,754.49 in completion costs as a direct consequence of Profex's default, but Profex counters that the "damages alleged were incurred as a result of Kirlin employees, after Profex ceased operations, or were otherwise beyond the scope of Profex's employ." (Opp. at 12.) While Kirlin relies on a ledger purporting to summarize payments to subcontractors (Porter Decl. ¶ 91), it fails to provide invoices or other evidence showing the payments were made to complete Profex's work or linking the costs to Profex's

15

alleged breach. While it is plausible that these completion costs are due to Profex's contractual failures, it is also plausible these costs are a result of Kirlin employees' own errors or beyond the scope of their employment as suggested by Profex's Bloomer Declaration (Opp. at 12, Bloomer Decl. ¶ 24.) While the ledger provided by Kirlin exemplifies damages incurred, a genuine issue of material fact does exist as to whether any or all of those damages were likely and directly attributable to Profex's default. Therefore, in drawing all reasonable factual inferences in favor of the non-moving party, the Court denies Kirlin's Motion for Partial Summary Judgment with respect to Kirlin's Counterclaim and Third-Party Complaint.

### E. Defendants are Entitled to Reasonable Attorney's Fees

Defendants seek recovery of reasonable attorneys' fees with respect to their summary judgment motion and Kirlin's partial summary judgment motion. (Br. at 28–29.) As the prevailing parties, Defendants are entitled to fees under the subcontract for their summary judgment motion, but no fees are recoverable for Kirlin's partial summary judgment motion, which was denied. New York follows the "American Rule"—that attorneys' fees are generally not recoverable unless authorized by statute, court rule, or agreement of the parties. *See 214 Wall St. Assocs., LLC v. Med. Arts-Huntington Realty,* 99 A.D.3d 988, 990 [2012]*; see also A.G. Ship Maint. Corp. v. Lezak*, 69 N.Y.2d 1, 5 [1986]. Here an express term for attorneys' fees exists in Section 15 of the Kirlin-Profex Subcontract. The clause provides that:

> [Kirlin may] recover from Subcontractor all losses, damages, penalties and fines, whether direct or consequential, and all reasonable attorney's fees suffered or incurred by Kirlin or by reason of or as a result of Subcontractor's default or Kirlin's options hereunder. (Subcontract at 6.)

This contractual language stands in stark contrast to cases where courts have denied attorneys' fees because the operative agreements were silent. *See Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 242-43 (S.D.N.Y. 2011) (The Court found that the parties' agreements do not contain "any provisions expressly referring to attorneys' fees.") Here, by contrast, the Subcontract contains an explicit fee-shifting clause, and as previously established, an enforceable contract exists between the parties. Notably, the fee-shifting provision was expressly included in Kirlin's January 21, 2021 Notice of Default and reiterated in its April 22, 2021, April 28, 2021, and September 9, 2021 Notices to Cure sent directly to Profex, underscoring the parties' understanding that attorneys' fees would be recoverable in connection with enforcement of the Subcontract. (*See* ECF No. 106-6, Notice of Default 3 & ECF No. 106-9, Notices to Cure 1-3.) While Kirlin's motion for partial summary judgment as to one Defendant was denied, the Defendants as a whole are the prevailing parties. New York courts have repeatedly emphasized that only a party who has achieved "the central relief sought" is entitled to attorneys' fees. *See Graham Ct. Owner's Corp. v. Taylor*, 24 N.Y.3d 742, 752 [2015] (quoting *Nestor v McDowell*, 81 N.Y.2d 410, 415-416 [1993]). Because Defendants obtained summary judgment on all Profex's claims, they clearly prevailed and are therefore the prevailing parties entitled to recover attorneys' fees under the Subcontract. Accordingly, Defendants' application for reasonable attorneys' fees is proper and should be granted under the express terms of the Subcontract. The parties are respectfully referred to Magistrate Judge Judith C. McCarthy for purposes of a hearing to determine what constitutes "reasonable" attorneys' fees.

# CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for summary judgment of Defendants Kirlin Builders, LLC, Liberty Mutual Insurance Company, and Westchester Fire Insurance Company (collectively, "Defendants") in its entirety, and DENIES Kirlin's motion for partial summary judgment with respect to Kirlin's counterclaim against Profex, Inc. and its third-party complaint against Western Surety Company.

Plaintiff's causes of action for breach of contract, quantum meruit, and unjust enrichment are DISMISSED. Specifically, Defendants are entitled to summary judgment, as a matter of law, on PCOs Nos. #1-65, #75-86, #88-89, #92, #98, #100-105, #106-107, #117, #123-125, #131, #134, #136, #138-144, #148-149, #151-152, #157, #161-168, #172-174, #176, #178-183, #186, and #189. Defendant and Third-party Plaintiff Kirlin's motion for summary judgment on its counterclaim—sounding in breach of contract—and on its performance-bond causes of action against Profex and Western Surety Company is DENIED.

Because Defendants have prevailed on their motion for summary judgment—requiring dismissal of each cause of action asserted by Plaintiff—they are entitled to reasonable attorneys' fees under the express terms of the Subcontract. The parties are respectfully REFERRED to Magistrate Judge Judith C. McCarthy for a hearing to determine the amount of such fees. The Clerk of Court is respectfully DIRECTED to terminate the main action and to enter judgment in favor of Defendants Kirlin, Liberty Mutual, and Westchester, and against Plaintiff.

After the Court's review of Kirlin's Rule 60(a) Motion for Correction or Clarification, the Clerk of Court is directed to REOPEN the Counterclaims and the Third-Party action. Counter-Claimant and Third-Party Plaintiff Kirlin, Counter-Defendant Profex, and Third-Party Defendant Western are DIRECTED to appear before the Court, via teleconference, on December 3, 2025, at 12:00 p.m., for a pretrial conference regarding Kirlin's counterclaim for recovery of cost-to-

complete damages against Profex and its third-party action against Western. To access the Webex teleconference: (1) dial 855-244-8681; (2) enter Access Code 2310 494 3855#; and (3) press # again to join. The Clerk of Court is further kindly directed to terminate the motion at ECF No. 116.

Dated: October 10, 2025
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

19